**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSE HERIBERTO CABADA, | : | |
| a/k/a Heriberto Moncada, | : | |
| | : | Civil Action No. 09-6317 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN DONNA ZICKEFOOSE, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Jose Heriberto Cabada
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640

Counsel for Respondent
Susan J. Steele
Assistant U.S. Attorney
970 Broad Street
Suite 700
Newark, NJ  07102

**BUMB**, District Judge

Petitioner Jose Heriberto Cabada, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.[1]  The respondent is Warden Donna Zickefoose.

I.  BACKGROUND

A.  Two Convictions/Two Identities

Petitioner Jose Heriberto Cabada was arrested on October 27, 1976, for trying to smuggle approximately 23.1 pounds of red rock heroin.  On March 28, 1977, Cabada was sentenced in the United States District Court for the Western District of Texas to a fifteen-year term of confinement for illegal importation of heroin in violation of 21 U.S.C. §§ 952(a) and 960(a)(1).  United States v. Cabada, Criminal No. 76-0050 (W.D. Tex.).

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

The Bureau of Prisons computed Cabada's "old law"[2] sentence, determining that the sentence commenced on March 28, 1977, and granting credit for time spent in presentence custody from October 27, 1976, to March 27, 1977. That sentence computation resulted in an Expiration Full Term Date of October 27, 1991.

On October 6, 1980, Cabada escaped from custody. At the time of his escape, he had a total of 4,038 days remaining until his Expiration Full Term Date.

Over thirteen years later, on November 17, 1993, the United States Drug Enforcement Agency arrested Petitioner, but under the name "Heriberto Moncada." On June 28, 1994, Petitioner (known only as Heriberto Moncada) was sentenced in the United States District Court for the Northern District of Illinois, to a 188-month term of confinement for attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. See United States v. Moncada, Criminal No. 93-0830 (N.D. Ill.).[3] The Bureau of Prisons gave Heriberto Moncada a new Register Number

---

[2] For crimes committed before November 1, 1987, the computation of a federal sentence is governed by 18 U.S.C. § 3568, commonly referred to as "old law" sentences. Section 3568 was repealed as part of the Sentencing Reform Act. See Pub.L. 98-473, Title II, c. II, §§ 212(a)(2) & 235(a)(1), 98 Stat. 1987, 2031 (1984). For crimes committed on or after November 1, 1987, the computation of a federal sentence is governed by 18 U.S.C. § 3585, commonly referred to as "new law" sentences.

[3] Records in this proceeding and related post-conviction proceedings reflect that Petitioner was also known by the aliases "Roman Favela Lopez" and "Guillermo Esperanza Rivera."

and, unaware of the 1977 sentence, computed Moncada's "new law" sentence without reference to it.

**At no time during the 1993-94 criminal proceedings, including the sentencing proceedings, and his 188-month incarceration did Petitioner ever reveal that he was Jose Heriberto Cabada who had escaped from federal prison in 1980 while serving a sentence under that name.**

On July 13, 2007, Moncada completed his 1994 sentence; he was released to the custody of United States immigration authorities.  Immigration authorities promptly learned that Petitioner was in fact Cabada who had used the alias Moncada in order to avoid detention for the 1977 sentence.  Consequently, on July 17, 2007, immigration authorities turned Petitioner over to the United States Marshals Service.

The Bureau of Prisons then re-computed Petitioner's "old law" 1977 sentence, which he was then deemed to be serving, awarding him credit for time spent in presentence custody from October 27, 1976, to March 27, 1977, operative time from March 28, 1977 through October 6, 1980, the date of his escape, and inoperative time for the period when he was on "escape" status from October 7, 1980 through July 12, 2007, the day before he was released to immigration authorities at the expiration of his 1994 sentence under the name Heriberto Moncada.  This renewed sentence

calculation resulted in a new Expiration Full Term Date of August 1, 2018. Petitioner's projected release date is May 5, 2013.[4]

B.  The Petition

In this habeas petition, Cabada contends that the Bureau of Prisons' computation of his 1977 sentence is incorrect in that: (1) the BOP has failed to credit him time for the time he spent in custody prior to October 7, 1980, the date of his escape, and (2) the BOP has failed to credit him time from his second arrest - as Heriberto Moncada - on November 17, 1993, when he ceased to be in "escape" status.

Respondent responds that the Bureau of Prisons has correctly calculated Petitioner's sentence both before and after the escape. As for the time after the escape, Respondent specifically argues that because Cabada was using an alias during the period of his confinement pursuant to the 1994 sentence, he remained on "escape" status from the 1977 sentence during that period. Stated differently, Cabada never resumed his initial custody. In addition, Respondent avers that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." See 18 U.S.C. § 3584(a). Because the 1994 sentencing court did not

---

[4] On July 11, 2009, the United States Parole Commission issued a Notice of Action to reopen and rescind Petitioner's presumptive parole date of October 26, 1981, and continue to expiration.

5

order the sentences to run concurrently (for obvious reasons: the court was unaware of the prior sentence), the Respondent's calculation was correct.

## II.   ANALYSIS

The Attorney General is responsible for computing federal sentences for all offenses committed since 1966, see United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. §§ 3568 and 3585, and the Attorney General has delegated that authority to the Director of the Bureau of Prisons, 28 C.F.R. § 0.96 (1992).

At the time of Cabada's 1976 offense, computation of a federal sentence was governed by 18 U.S.C. § 3568, and was comprised of a two-step determination of, first, the date on which the federal sentence commences and, second, the extent to which credit is awardable for time spent in custody prior to commencement of the sentence.

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence.  The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed ...
>
> If any such person shall be committed to jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

18 U.S.C. § 3568.

The BOP properly determined that Petitioner's 1977 federal sentence commenced on March 28, 1977, the day it was imposed.  In addition, the BOP properly awarded Petitioner prior custody credit for the period from October 26, 1976, the date of his arrest, until March 27, 1977, the date before sentence was imposed.  Finally, the BOP properly awarded Petitioner credit for the period from March 28, 1977, through October 6, 1980, the date of his escape.

Petitioner does not dispute that he is not entitled to credit for time that he is on "escape" status, nor could he.  What is at the heart of the within dispute is when did Petitioner cease to be on escape status: (a) on November 17, 1993, when he was arrested on different federal charges under the name "Heriberto Moncada"? or (b) on July 13, 2007, when he was released on his 1994 federal sentence and immigration authorities learned his true identity?

C.  <u>Analysis</u>

It is well-settled that a person, duly convicted of a criminal offense and upon whom a sentence of imprisonment has been imposed, has a right to serve that sentence promptly and continuously.  It is equally well-settled that a prisoner's sentence can be interrupted under certain circumstances involving the fault of the prisoner, such as escape, violation of parole, or civil contempt.  <u>See</u>, <u>e.g.</u>, <u>Anderson v. Corall</u>, 263 U.S. 193

(1923); Vega v. United States, 493 F.3d 310 (3d Cir. 2007); In re Garmon, 572 F.2d 1373 (9th Cir. 1978); United States v. Liddy, 510 F.2d 669 (D.C. Cir. 1974) (en banc), cert. denied 420 U.S. 980 (1975); Theriault v. Peek, 406 F.2d 117 (5th Cir. 1968) (per curiam), cert. denied, 394 U.S. 1021 (1969); White v. Pearlman, 42 F.2d 788 (10th Cir. 1930); Luther v. Vanyur, 14 F.Supp.2d 773 (E.D.N.C. 1997); United States v. Mazzoni, 677 F.Supp. 339 (E.D. Pa. 1987).

Although section 3568 dictates the computation of a federal sentence, it does not forbid the interruption of a sentence based upon prisoner misconduct. See, e.g., In re Garmon, 572 F.2d at 1375-76 (noting that "Congress intended in § 3568 to clarify the method of calculating the commencement of a sentence and the deduction for good conduct"); United States v. Liddy, 510 F.2d at 673-74 (noting that "Congress' intent in enacting the provision was not to impose a rigid method of sentence calculation, beyond establishing a firm date of sentence commencement").

The Bureau of Prisons, in its Program Statement, has addressed the issue as to when a prisoner no longer receives custody credit:

> 1. Explanation and application of inoperative time.
>
> After a sentence has begun to run, it becomes "inoperative" if it stops running for any reason and remains inoperative until it resumes. ...
>
> There is no statute that discusses inoperative time. ...

> 2.   Inoperative time reasons.
>
> The most frequent reasons that a sentence becomes inoperative are escape, ...
>
>    a.   Escape.  If a person departs federal custody after arrest without the permission of the Attorney General or order of the court, then such person will be placed in escape status and the sentence then serving shall became inoperative.  ...
>
>       (2)  If the prisoner was serving a sentence at the time of escape, then the sentence will become inoperative beginning the day after the escape and will remain in that status through the day before federal custody <u>resumes</u>.  ...

BOP Program Statement 5880.30, <u>Sentence Computation Manual ("Old Law" - Pre-CCCA - 1984)</u>, Chapter V ("Inoperative Time"), Pages 1-2 (emphasis added).

Relying upon the above Program Statement's language, Respondent argues that federal custody did not resume until the BOP <u>knew</u> that the person in its custody was the escaped prisoner Jose Heriberto Cabada.  Put differently, the Petitioner was not entitled to credit until he returned to custody for the offense of the initial conviction.  Because the Bureau of Prisons was unaware of Petitioner's true identity, his original custody never resumed.  Respondents cites, by analogy, to Program Statement 5880.28, the Program Statement for calculation of "new law" sentences, which provides, in relevant part:  "In the unlikely event that a person avoids detection as an escapee after arrest on another federal charge and is released from that charge

9

without being taken into federal custody as an escapee, then the date of offense will not be the date on which that arrest occurred." Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u>, Page 1-14B.  Respondent also notes that, by concealing his identity in relation to the 1993-94 prosecution and sentence, Petitioner deprived the sentencing court of his correct criminal history and of the opportunity to determine whether the 1994 sentence should be served concurrently or consecutively to the undischarged 1977 sentence.  Because the sentencing court did not order concurrent sentences, the prison's calculation is correct.

The Court is persuaded that because Petitioner did not return to custody for his 1977 conviction(smuggling red rock heroin) in 1994, but was sent to the Bureau of Prisons for his 1994 conviction (cocaine trafficking), Petitioner never "resumed" federal custody as contemplated by Section 3568 of Title 18.  Although not precisely on point, this Court is guided by a decision of the United States Court of Appeals for the Tenth Circuit rejecting a prisoner's claim that he was entitled to credit for time that he was erroneously released by state authorities, after he had escaped from federal authorities and used an alias in connection with his state proceedings.

> In 1991, [Murphy] was convicted of various federal drug crimes and sentenced to ten years' imprisonment.  On December 5, 1992, Murphy escaped from the Federal Prison Camp in La Tuna, Texas.  On January 23, 1993,

> Fort Lauderdale, Florida police arrested Murphy on charges related to obtaining false identity documents. As recounted in his brief, Murphy "gave his name as 'Murphy,' and that he was born in 'Hillsboro, Oregon.' Mr. Murphy offered no other information ... and from this point on, he remained silent." However, Murphy concedes that when he "was arrested and taken into official custody by the State of Florida, he was identified through his I.D. Card as Cletis Murphy, his deceased brother," and he admits that he continued to use his brother's name while he remained in state custody.
>
> Because of a discrepancy between the birth date listed on the Cletis I.D. card and Murphy's stated age, the arresting officer ordered an FBI fingerprint check. ... Apparently the fingerprint check returned without any outstanding "wants or warrants." Thereafter, still using the name "Cletis Murphy," Murphy pled guilty to the state charges on February 23, 1993, and he was sentenced to an eighteen month term of probation and released. On October 20, 1994, federal marshals arrested Murphy in Houston, Texas.
>
> Murphy now contends that he should be given credit for the 574 days during which he was "erroneously released from official custody by the State of Florida, until his subsequent arrest by the U.S. Marshals." ...
>
> As the magistrate judge correctly noted, "an escaped prisoner cannot be credited with the time he is at large." A prisoner is not entitled to credit for time he is at liberty unless he is erroneously discharged "without any contributing fault on his part." In this case, Murphy escaped. Thereafter his use of an alias constituted contributing fault in his erroneous release from custody in Florida.
>
> ... [W]e AFFIRM the denial of the petition.

<u>Murphy v. Perrill</u>, 107 F.3d 880, 1997 WL 92922 (10th Cir. March 5, 1997) (record citations and footnotes omitted).

This Court is also guided by the approach of the Court of Appeals for the Third Circuit, also evaluating whether a prisoner

11

is entitled to credit against a federal sentence for time that he was erroneously released by state authorities instead of being delivered to federal authorities. See Vega v. United States, 493 F.3d 310 (3d Cir. 2007).

> The diverging paths taken by courts of appeals and the lack of any precedent from this Court compel us to formulate a test which district judges may apply in resolving claims for credit for time at liberty when a prisoner has been erroneously released by one sovereign without having completed an obligation to a separate sovereign. In fashioning this test, we take full cognizance of the important interests at stake.
>
> As a preliminary matter, we note that the interests upon which we base this test do not have constitutional stature. ...
>
> Because we do not find a constitutional basis upon which to anchor the rule of credit for time spent erroneously at liberty, the roots of the rule must be located elsewhere. In this respect, we look to the common law. ... [U]nder the common law, "[t]he government is not permitted to delay the expiration of the sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then reimprisoning him." ...
>
> Looking to the common law, we find that three interests are of paramount importance when determining whether an erroneously released prisoner should be granted credit for the time he was at liberty. The first is simple fairness toward the prisoner. As the Tenth Circuit stated in White:
>
>> A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past.
>
> ...

12

> In addition to affecting a prisoner's rights, allowing the delayed or interrupted service of a sentence grants the officers entrusted with the execution of sentences excessive power. ...
>
> However, as important as the rights of prisoners and the need to limit the capricious exercise of governmental power is the government's and society's interest in convicted criminals serving out their sentences. Therefore, any rule we articulate must be heedful of these three competing interests and ensure that all interested parties - the prisoner, government and society share equally in the benefits and burdens of such a rule.
>
> With these important interests in mind, we turn to the proper formulation of the doctrine. ... Therefore, in order for a prisoner to receive credit for time he was erroneously at liberty, the prisoner's habeas petition must contain facts that demonstrate that he has been released despite having unserved time remaining on his sentence. Once he has done this, the burden shifts to the government to prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts.

Vega, 493 F.3d at 316-320 (citations omitted).

Applying these "interests [] of paramount importance" to the facts here, this Court holds that the Respondent's calculation was not only reasonable, it was correct. Petitioner, who was certainly entitled to have a chance to reestablish himself, earned a longer term of imprisonment when he not only escaped from prison, but thereafter continued to conceal his true identity. There was no capricious or excessive behavior on the part of any governmental official. The officers, the sentencing court, and the Bureau of Prisons acted upon the only information available to them: that Moncado had no prior criminal record.

Specifically, the sentencing court in 1994 was deprived of accurate information about Petitioner's criminal history and of the opportunity to exercise its discretion as to whether the 1994 sentence should be served concurrently or consecutively to the undischarged 1977 sentence. See 28 U.S.C. § 3584. Thus, the Bureau of Prisons reasonably followed the statutory presumption, applicable at the time the second sentence was imposed, that Petitioner's sentences should be served consecutively. This result flows directly from Petitioner's own culpable conduct, first, in escaping, and most importantly to the issue here, deceptively concealing his true identify from federal law enforcement authorities as well as the sentencing court.

In sum, Petitioner has not established that the computation of his sentence violates any federal statutory or constitutional provision or that the calculation of his sentence was unreasonable. Petitioner is not entitled to relief on this Petition.

### III. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

s/Renée Marie Bumb  
Renée Marie Bumb  
United States District Judge

Dated: September 10, 2010